UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISON

TIMOTHY J. MUDD                                                              PLAINTIFF

v.                                          CIVIL ACTION NO.  5:24-CV-P170-JHM

ADAM SMITH *et al.*                                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motions for summary judgment filed by Defendant Comprehensive Correctional Care (CCC) (DN 26) and the Christian County Defendants – Adam Smith, Bryan Rives, and Stephen Cato (DN 27).  Plaintiff has filed responses to these motions (DNs 34 & 35), and Defendants have filed replies (DNs 36 & 37).  This matter is ripe for adjudication.  For the following reasons, Defendants' motions for summary judgment will be granted.

### I.

Plaintiff initiated this 42 U.S.C. § 1983 civil-rights action when he was incarcerated as a convicted prisoner at Christian County Jail (CCJ).  Plaintiff brought suit against Defendant CCC and the three Christian County Defendants – Defendants Smith, Rives, and Cato, in their individual capacities only. The Court conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915A, construed the complaint as asserting Eighth Amendment claims for deliberate indifference to a serious medical need, and allowed the action to proceed.  (DN 5).

### II.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the

basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

## III.

In their motions for summary judgment, Defendants argue that they are entitled to judgment in their favor both on the merits of Plaintiff's Eighth Amendment claims against them and because Plaintiff failed to exhaust his administrative remedies. The Christian County Defendants additionally argue that they are entitled to qualified immunity. Because the Court is deciding the motions on the merits, the Court does not herein address either exhaustion or qualified immunity.

### A. Christian County Defendants

#### 1. Defendant Cato

The only Christian County Defendant that Plaintiff makes personal allegations against in the verified complaint is CCJ Deputy Jailer Cato (DN 1).[1] In support of his claim against Defendant Cato, Plaintiff presents the declaration of an inmate who states that he was in the cell with Plaintiff on the night of July 22, 2024, and that he witnessed Plaintiff in severe abdominal pain for several hours, moaning and groaning, with Plaintiff stating that he was unable to breathe, and that he went to get Defendant Cato to help Plaintiff. (DN 35-1).[2] Plaintiff avers that Defendant Cato came to his cell and found him "doubled over in excrusating pain, puking, and unable to walk." (DN 1, PageID: 4). Plaintiff further avers that he asked Defendant Cato to call an ambulance for him, but that Defendant Cato responded that the only thing he could do was take Plaintiff's blood pressure. (*Id.*). The incident report submitted by Plaintiff shows that Defendant

---

[1] In his affidavit, Defendant CCJ Jailer Smith explains that Defendant CCC was "the contracted medical care provider at CCJ during Plaintiff's incarceration" and that it made all decisions regarding medical treatment provided to inmates. (DN 27-2, PageID: 100, ¶ 6).

[2] In its reply, Defendant CCC argues that this declaration must be excluded as evidence because Plaintiff did not disclose the name of the inmate as a witness during discovery. *See generally Howe v. City of Akron*, 801 F.3d 718, 747-48 (6th Cir. 2015). The Christian County Defendants, however, make no such argument. Thus, because the Court is considering the declaration only in relation to Plaintiff's claim against Defendant Cato, a Christian County Defendant, the Court need not address Defendant CCC's argument that the declaration should be excluded in regard to Plaintiff's claim against it.

Cato took Plaintiff's blood pressure and then radioed Defendant Rives, a CCJ captain, from Plaintiff's cell to determine what could be done for Plaintiff, and that Defendant Rives called a medical provider who advised him that Plaintiff should be given Tylenol and dicyclomine.[3]  (DN 34-1, PageID: 395).  These medications were then provided to Plaintiff in the recommended amount.  *Id*.  Plaintiff avers that Defendant Cato then told him they could not do anything else for him until he could go to sick call the following morning to be seen by a Defendant CCC nurse. (DN 1, PageID: 4-5).  The medical progress note submitted by Plaintiff shows that he was seen by a Defendant CCC nurse the next morning at 9:50 a.m. and that, after examining Plaintiff, the nurse consulted with a physician and made an appointment for Plaintiff with a gastroenterologist. (DN 34-1, PageID: 386).

The Eighth Amendment prohibits prison officials from showing deliberate indifference to a convicted prisoner's serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A deliberate indifference claim "has objective and subjective components."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).  "The objective component requires the existence of a 'sufficiently serious' medical need."  *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  "The subjective component requires an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'"  *Id*. (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)).   For purposes of ruling upon the instant motions for summary judgment, the Court will assume that Plaintiff suffered from a sufficiently serious medical need. Thus, here, the Court need only decide whether the undisputed evidence shows that Defendant Cato is entitled to judgment as a matter of law as to the subjective component.

---

[3] The Court assumes that the medical provider was affiliated with Defendant CCC but nowhere is that made explicit.

Under the subjective component, "the plaintiff must show that [the] defendant acted with a mental state 'equivalent to criminal recklessness'" in response to the plaintiff's serious medical need. *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013)). Such a "showing requires proof that [the] defendant subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it." *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (internal quotation marks omitted)).

Upon review, the Court concludes that the undisputed evidence shows that Defendant Cato did perceive a substantial risk to Plaintiff but that he did not disregard that risk and instead took reasonable measures to abate it. The evidence shows that upon arriving to Plaintiff's cell and seeing Plaintiff's state, Defendant Cato took Plaintiff's blood pressure and immediately radioed another jail official to see what could be done for Plaintiff. That jail official called a medical provider who informed the jail official that Plaintiff should be given two medications until he could be seen in the morning by a Defendant CCC nurse. Defendant Cato and another deputy then provided those medications to Plaintiff and Plaintiff was seen by a nurse the following morning. Corrections officers are entitled to rely on the medical judgment of prison healthcare providers and "commit[] no act of deliberate indifference in adhering to [the] advice" of a medical professional because "nonmedical jail personnel are entitled to reasonably rely on the assessments made by the medical staff." *Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (citing *Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009) and quoting *McGaw v. Sevier County, Tenn.*, 715 F. App'x 495, 498-99 (6th Cir. 2017)); *see also Hamilton v. Pike Cnty., Ky.*, No. 11-99, 2013 U.S. Dist. LEXIS 18317, (E.D. Ky. Feb. 11, 2013) ("Non-medical

prison officials, such as Jailer Scott, act reasonably when they rely on the judgment of the prison medical staff.") (collecting circuit cases holding same).

Thus, because Defendant Cato took the actions that the medical provider instructed him to take, the Court concludes that no reasonable jury could find that Defendant Cato acted unreasonably in response to Plaintiff's serious medical need, and the Court will grant summary judgment in Defendant Cato's favor.

### 2. Defendant Smith

The Court next addresses Plaintiff's individual-capacity claim against Defendant CCJ Jailer Smith. The complaint contains no allegations against Defendant Smith. Thus, the Court assumes that Plaintiff seeks to hold Defendant Smith liable under a theory of supervisory liability. Supervisory liability, however, "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

As the Christian County Defendants correctly argue, because there is no evidence of personal involvement on the part of Defendant Smith, Plaintiff cannot establish that he violated Plaintiff's constitutional right to medical care under the Eighth Amendment. Thus, the Court will grant summary judgment in favor of Defendant Smith.

### 3. Defendant Rives

As with Defendant Smith, Plaintiff makes no personal allegations against Defendant Rives in the complaint. The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (italics in original) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the claim against the defendant is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming dismissal of plaintiff's claims for failure to state a claim upon which relief may be granted where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Thus, because the complaint contains no personal allegations against Defendant Rives, the Court will enter summary judgment in his favor.[4]

### B. Defendant CCC

The same analysis that applies to a § 1983 claim against a municipality or county applies to a § 1983 claim against a privately contracted entity such as Defendant CCC. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996). Neither a municipality nor a county can be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom of the municipality or county and the alleged constitutional deprivation. *Monell*, 436 U.S.

---

[4] In his response to the Christian County Defendants' motion for summary judgment, Plaintiff also argues that Christian County "should have had a medical team on shift day through night to meet inmates medical needs" and that Christian County failed to properly train jail staff. (DN 35, PageID: 400-401). Christian County, however, is not party to this action.

at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability" of the municipality or county under § 1983. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)). Thus, the liability of a contracted private entity must be based on a policy or custom of the entity. *Id.*; *see also Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001).

On initial review of this action, the Court allowed a claim to proceed against Defendant CCC because Plaintiff alleged that a "scope of his stomach" had been ordered by a gastroenterologist but had been cancelled on two occasions because Defendant CCC refused to pay for it. The Court construed this as a claim that Defendant CCC had a custom or policy of refusing to pay for physician-ordered medical procedures.

The evidence submitted by Defendant CCC shows that Plaintiff was seen by a gastroenterologist at a local hospital on June 24, 2024, and that the gastroenterologist ordered an esophagogastroduedenoscopy ("EGD") to assess for peptic ulcer disease. (DN 26-6, PageID: 127). The evidence further shows that Plaintiff was scheduled for an EGD on August 12, 2024, but that it was cancelled after jail staff failed to place him on NPO ("nothing by mouth") status twelve hours prior to the procedure. (DN 26-4, PageID: 127). The record also shows that Plaintiff was rescheduled for the procedure on October 7, 2024, but that it was also cancelled due to the failure of jail staff to place him on NPO status (*Id.*).[5] Thus, the evidence presented shows that Plaintiff's cancelled appointments were caused by the actions of jail officials and not because Defendant CCC refused to pay for the procedure pursuant to one of its customs or policies.

---

[5] Plaintiff initiated this action on November 11, 2025. The records reflect that on December 19, 2024, Plaintiff had an EGD and was diagnosed with a hiatal hernia and gastritis. (DN 26-7, PageID: 128).

In his response to Defendant CCC's motion for summary judgment, Plaintiff also argues that CCC should be held liable regarding the incident that occurred on the night of June 22, 2024, because it should have had a "medical team on duty 24/7 . . . knowing medical staff is not properly or professionally trained to handle the situation I was experiencing." (DN 34, PageID: 382). This ground for relief was not set forth in the complaint, and Plaintiff may not assert a new theory of liability in response to a motion for summary judgment. Allowing a plaintiff to raise new theories in response to a motion for summary judgment would "den[y] a defendant sufficient notice of what claims to investigate." *West v. Wayne Cnty.*, 672 F. App'x 535, 541 (6th Cir. 2016). Moreover, by the summary judgment stage, a plaintiff "has conducted discovery and has had the opportunity to amend the complaint and raise additional theories." *Id.* (citing *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 665 (6th Cir. 2012)); *see also Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent [the plaintiff] seeks to expand his claims to assert new theories, he may not do so in response to summary judgment or on appeal.") (citations omitted).

Thus, the Court concludes that Plaintiff has failed to raise a genuine issue of material fact as to his claim against Defendant CCC and that it is therefore entitled to judgment as a matter of law.

**IV.**

For the foregoing reasons, **IT IS ORDERED** that Defendants' motions for summary judgment (DNs 26 & 27) are **GRANTED**.

Because Defendant CCC has clarified that its name is Comprehensive Correctional Care and not "Comprehinsive Corr. Care," the **Clerk of Court** is **DIRECTED** to **correct the name of Defendant CCC on the docket sheet**.

Date:   July 18, 2025

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
4414.011